IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CASEY RAY VIENNA,

    Plaintiff,

v.                                                                   2:18-cv-00783-LF

ANDREW M. SAUL,[1] Commissioner
of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Casey Ray Vienna's Motion to Reverse and Remand for a Rehearing with Supportive Memorandum (Doc. 15), which was fully briefed on April 1, 2019. *See* Docs. 19, 20, 21. The parties consented to my entering final judgment in this case. Docs. 4, 7, 8. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") impermissibly "picked and chose" among the moderate mental limitations noted by non-examining state agency psychologist Dr. Sheri Simon. I therefore GRANT Mr. Vienna's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

### I.    Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.      Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Mr. Vienna was born in 1991, graduated from high school in 2009, and worked as a grocery store sacker, landscaper, and construction supervisor. AR 66, 221, 267.[4] Mr. Vienna filed an application for Disability Insurance Benefits ("DIB") and an application for Supplemental Security Income ("SSI") on September 29, 2014, alleging disability since August

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 12-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

1, 2014 due to a Tarlov cyst, displaced lumbar intervertebral disc, degenerative arthritis, lumbosacral radiculopathy, lumbar facet arthropathy, sacroiliitis, disk herniation, a MCL ("medial collateral ligament") knee injury, lumbar spinal stenosis, and lumbar spasm. AR 219–29, 266. The Social Security Administration ("SSA") denied his claims initially on May 11, 2015. AR 145–51. The SSA denied his claims on reconsideration on October 7, 2015. AR 156–61. Mr. Vienna requested a hearing before an ALJ.[5] AR 163−64. On March 2, 2017, ALJ Raul C. Pardo held a hearing. AR 31–74. ALJ Pardo issued his unfavorable decision on June 22, 2017. AR 9–30.

The ALJ found that Mr. Vienna met the insured status requirements of the Social Security Act through June 30, 2019. AR 14. At step one, the ALJ found that Mr. Vienna had not engaged in substantial, gainful activity since August 1, 2014, his alleged onset date. *Id*. At step two, the ALJ found that Mr. Vienna's degenerative disc disease status post surgery, depression, right knee damage, and obesity were severe impairments. *Id.* The ALJ found that Mr. Vienna's hypertension was a non-severe impairment. *Id*. At step three, the ALJ found that none of Mr. Vienna's impairments, alone or in combination, met or medically equaled a Listing. AR 15–16. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Vienna's RFC. AR 16–22. The ALJ found Mr. Vienna had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; and stoop occasionally. He is limited to performing simple, routine tasks and only occasionally responding appropriately to the public. The claimant's time off task can be accommodated by normal breaks.

AR 16−17.

---

[5] The SSA found that Mr. Vienna had good cause for his late request for an ALJ hearing. AR 162, 166.

At step four, the ALJ found that Mr. Vienna could not perform any of his past relevant work. AR 22–23. The ALJ found Mr. Vienna not disabled at step five because he could perform jobs that exist in significant numbers in the national economy, such as warehouse checker and router dispatcher. AR 23–24. On July 27, 2017, Mr. Vienna requested that the Appeals Council review the ALJ's unfavorable decision. AR 218. On June 22, 2018, the Appeals Council denied the request for review. AR 1–6. Mr. Vienna timely filed his appeal to this Court on August 16, 2018. Doc. 1.[6]

### IV. Mr. Vienna's Claims

Mr. Vienna raises three arguments for reversing and remanding this case: (1) the ALJ impermissibly "picked and chose" among the moderate mental limitations noted by non-examining state agency psychologist Dr. Sheri Simon; (2) the ALJ's RFC is flawed because it fails to include a function-by-function assessment of Mr. Vienna's work-related abilities as required by SSR 96-8p; and (3) the ALJ's RFC is not supported by substantial evidence because the ALJ failed to adequately consider his statements about pain. *See* Doc. 15 at 2, 14−24.

Because the Court remands based on the ALJ's failure to properly analyze the opinion of Dr. Simon, the Court does not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### V. Analysis

Although an ALJ need not discuss every piece of evidence, the ALJ must discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what

---

[6] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. §§ 404.981, 416.1481; *see also* AR 2–3.

weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996).[7] "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("exact correspondence between a medical opinion and the mental RFC is not required"). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Ultimately, an ALJ is required to weigh medical source opinions and to provide "appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5; *see also Keyes-Zachary*, 695 F.3d at 1161 ("It is the ALJ's duty to give consideration to all the medical opinions in the record," and to "discuss the weight he [or she] assigns to such opinions.").

In 2007, the Tenth Circuit Court of Appeals decided two cases that control here. First, in *Haga*, the court held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others. 482 F.3d at 1208. "[T]he ALJ

---

[7] Rescinded by Federal Register Notice Vol. 82, No. 57, page 15263, for claims filed after March 27, 2017. Because Mr. Vienna filed his claims in 2014, SSR 96-5p still applies to his claims.

6

did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court remanded the case "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* Later in 2007, in *Frantz v. Astrue*, 509 F.3d 1299, 1302−03 (10th Cir. 2007), the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of non-examining physicians.

### A. The ALJ Erred by Failing to Either Incorporate, or Explain Why He Rejected, Moderate Mental Limitations Noted in the Medical Opinion of Dr. Shari Simon.

Mr. Vienna argues that the ALJ failed to account for all the moderate limitations in non-examining state agency consultant Dr. Simon's Mental Residual Functional Capacity Assessment ("MRFCA"). Doc. 15 at 14–19. Specifically, he argues that the ALJ failed to account for the moderate limitations Dr. Simon found in his abilities

> to maintain attention and concentration for extended periods of time; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; and complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods.

*Id*. at 16. The Commissioner argues that the ALJ's RFC assessment is consistent with Dr. Simon's Section III findings,[8] and that the ALJ was not required to discuss each of the moderate limitations in Section I of Dr. Simon's opinion. Doc. 19 at 12–13. Next, the

---

[8] Mental Residual Functional Capacity Assessment ("MRFCA") forms are completed by psychological consultants through the SSA's Electronic Claims Analysis Tool (eCAT). Prior to eCAT, consultants completed special form SSA-4734-F4-SUP. That form was formally divided into Section I ("Summary Conclusions" containing checkboxes) and Section III ("Functional Capacity Assessment"). Although SSA-4734-F4-SUPs (MRFCAs) completed through eCAT no longer have these section labels, parties and the courts have continued to refer to the checkbox portion of each MRFCA as "Section I," and the "narrative" portion(s) as "Section III." In addition, the instructions contained in POMS DI 24510.060–65 on how to complete SSA-4734-F4-SUP still apply to the eCAT version of the form.

Commissioner argues that both the ALJ's RFC and Dr. Simon's Section III findings "adequately captured the moderate limitations noted in Section I." *Id*. at 14. Alternatively, the Commissioner argues that there is no error because the ALJ only gave Dr. Simon's opinion partial weight, after "noting that the opinion was internally inconsistent." *Id*. at 16–17. The Court finds the Commissioner's arguments unpersuasive, and agrees with Mr. Vienna that the ALJ was required to either include, or to explain his reasons for rejecting, the moderate limitations noted in Section I of Dr. Simon's opinion.

An ALJ is required to consider and discuss both Section I and Section III findings.[9] As the Honorable Stephan M. Vidmar thoroughly explained in his opinion rejecting similar arguments that an ALJ is not required to consider Section I findings, the Program Operations Manual System ("POMS"),[10] regulations, and case law require the ALJ to address all of a doctor's findings, not just those in Section III. *See Silva v. Colvin*, 203 F. Supp. 3d 1153, 1158–66 (D.N.M. 2016).[11] An ALJ may rely exclusively on the Section III findings only if the

---

[9] I repeatedly have rejected the Commissioner's argument that the ALJ need only account for a doctor's Section III findings. *See, e.g.*, *Heckel v. Colvin*, No. 15cv453-LF, 2016 WL 9781164 (D.N.M. Sept. 28, 2016); *Martinez v. Colvin*, No. 15cv817-LF, 2016 WL 9774939 (D.N.M. Nov. 23, 2016); *Bennett v. Berryhill*, No. 16cv399-LF, 2017 WL 5612154 (D.N.M. Nov. 21, 2017); *Jones v. Berryhill*, No. 15cv842-LF, 2017 WL 3052748 (D.N.M. June 15, 2017); *Saavedra v. Berryhill*, No. 16cv822-LF, 2018 WL 324236 (D.N.M. Jan. 8, 2018); *Dorsainville v. Berryhill*, No. 16cv693-LF, 2018 WL 637393 (D.N.M. Jan. 31, 2018); *Manzanares v. Berryhill*, 16cv1412-LF, 2018 WL 3455410 (D.N.M. July 18, 2018); *Bosse v. Saul*, No. 18cv475-LF, 2019 WL 3986046 (D.N.M. Aug. 23, 2019).

[10] The POMS is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). The Court "defer[s] to the POMS provisions unless [it] determine[s] they are 'arbitrary, capricious, or contrary to law.'" *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quoting *McNamar*, 172 F.3d at 766).

[11] This Court is split in its interpretation of *Smith v. Colvin,* 821 F.3d 1264 (10th Cir. 2016) and whether that case held that an ALJ need not consider moderate limitations noted in Section I of the MRFCA. *Compare Silva v. Colvin*, 203 F. Supp. 3d 1153, 1163 n.4 (D.N.M. 2016):

"Section III narrative does not contradict any Section I limitations and describes the effect each Section I limitation would have on the claimant's mental RFC." *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) (unpublished). The ALJ "should [not] turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III." *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015) (unpublished). If a doctor's "Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished); *see also Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) ("[Section I] observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored. True, in some cases, an ALJ may rely on a doctor's narrative RFC,

---

> Rather than overruling *Haga* and *Frantz* (by holding that ALJs may ignore a doctor's Section I findings), the Court reads *Smith* as addressing moderate limitations that may be adequately accounted for in an ALJ's RFC limitation to unskilled (or simple) work. *Smith*, 821 F.3d at 1268–69 (holding that the ALJ's RFC assessment adequately accounted for the doctor's assessment of certain moderate functional limitations). In other words, the Court interprets *Smith* as being more about unskilled work, and less about Section I versus Section III findings.

*with Rush v. Saul*, 389 F. Supp. 3d 957, 969 (D.N.M. 2019):

> Based on *Smith*, the Court rejects Ms. Rush's argument that, once the ALJ gave great weight to Dr. Walker's opinion, the ALJ was required to either adopt Dr. Walker's Section I moderate limitations or, for each moderate limitation, explain why he did not adopt that limitation. *Smith* mandates affirmance here because the doctor's narrative RFC and the ALJ's RFC [found in Section III] are consistent.

*See also Mills v. Berryhill*, No. 16cv573 CG, 2017 WL 3149414, at *10 (D.N.M. June 9, 2017) ("In *Smith*, the Tenth Circuit held the ALJ's RFC adequately incorporated all of the claimant's functional limitations, and the Tenth Circuit did not base its holding on the fact that the ALJ relied on Section III rather than Section I. 821 F.3d at 1269.").

rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations.").

Under *Haga* and *Frantz*, the ALJ has a duty to explain why he adopted some of Dr. Simon's limitations while rejecting others. When an ALJ relies solely on a doctor's Section III narrative, this Court must analyze whether the Section III narrative "adequately encapsulates" the moderate limitations in Section I of the doctor's opinion. *See Carver*, 600 F. App'x at 619. In other words, the Court must determine whether the ALJ adequately accounted for the limitations noted by Dr. Simon in the RFC assessment. If not, the Court must determine whether the ALJ adequately explained why he rejected the missing limitations.

In Section I of her May 5, 2015 MRFCA, Dr. Simon found that Mr. Vienna had the following moderate limitations:

### **Understanding and Memory**

- Moderate limitation in the ability to understand and remember detailed instructions;

### **Sustained Concentration and Persistence**

- Moderate limitation in the ability to carry out detailed instructions;
- Moderate limitation in the ability to maintain attention and concentration for extended periods;
- Moderate limitation in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- Moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

### **Social Interaction**

- Moderate limitation in the ability to interact appropriately with the general public;

### **Adaptation**

- Moderate limitation in the ability to respond appropriately to changes in the work setting.

AR 104–05.

> In Section III of the MRFCA (under the heading "Rating") Dr. Simon found that:
>
> From a mental standpoint, objective evidence does not support marked impairment in adaptive functioning. Though the clmt may have some problems functioning, symptoms do not preclude clmt from engaging in simple, repetitive, routine tasks. After review of the evidence in the file, the overall Mer ["medical evidence of record"] supports a rating of unskilled capacity.

AR 105.

> The ALJ discussed Dr. Simon's opinion[12] in a single paragraph of his RFC analysis:
>
> The State agency psychological consultants limited the claimant to unskilled work (Exs. 3A; 4A; 5A; 6A). This is given partial weight. Although state agency medical consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act, the opinion is internally inconsistent as moderate limitations in social functioning was also found by these consultants. I considered the claimant's reports of social anxiety in limiting his interaction with the public.

AR 22. The ALJ found that Mr. Vienna had a mental RFC which limited him "to performing simple, routine tasks and only occasionally responding appropriately to the public. The claimant's time off task can be accommodated by normal breaks." AR 16–17.

The ALJ essentially adopted Dr. Simon's Section III finding that Mr. Vienna was limited to unskilled work by limiting him to "simple, routine tasks." The ALJ noted that there was a conflict between Dr. Simon's Section I and Section III findings in relation to social interaction limitations and adopted Dr. Simon's Section I finding of a moderate limitation in the "ability to interact appropriately with the general public" by limiting Mr. Vienna to "only occasionally responding appropriately to the public." AR 17, 104. The ALJ offered no other reasons for giving Dr. Simon's opinion "partial weight," and noted no other conflicts between Dr. Simon's Section I and Section III findings.

---

[12] The ALJ discussed the opinions by the two State agency psychological consultants together. AR 22. Although the opinions were prepared by two different doctors on two different dates, they are identical to each other. *Compare* AR 103−06 (opinion of Sheri L. Simon, Ph.D., on 5/5/2015) *with* AR 138−40 (opinion of B. Rudnick, M.D., on 9/22/2015).

The Commissioner argues that "the ALJ fully accounted for all of Dr. Simon's mental limitations in the RFC by limiting [Mr. Vienna] to simple, routine work with limited interaction with the public." Doc. 19 at 16. Alternatively, the Commissioner argues that the ALJ found Dr. Simon's opinion "internally inconsistent" and only gave it partial weight, which excused the ALJ from explaining why he adopted some portions of Dr. Simon's opinion but not others.[13] *See id*. This is not sufficient. As explained above, the reason the ALJ gave for finding Dr. Simon's opinion internally inconsistent related only to Dr. Simon's finding that Mr. Vienna had moderate limitations in social functioning, which the ALJ accounted for in the RFC. The ALJ otherwise adopted Dr. Simon's Section III opinion but failed to explain why he rejected other aspects of Dr. Simon's Section I findings that also were inconsistent with her Section III narrative.

The ALJ did not address at least two moderate mental limitations in Section I of Dr. Simon's opinion.[14] In Section I, Dr. Simon found that Mr. Vienna had moderate limitations in his "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" and in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 104. Dr. Simon's Section III findings do not account for these two moderate limitations. In Section III, without any narrative explanation about these moderate limitations, Dr. Simon found that Mr. Vienna could engage in "simple, repetitive, routine tasks" and perform unskilled work. AR 105. The ability to "maintain regular attendance and be punctual within customary tolerances" and the ability "to

---

[13] The Commissioner also suggests that the ALJ partially rejected Dr. Simon's opinion because it was inconsistent with the opinion of Dr. McGuinness. Doc. 19 at 16. Of course, the ALJ did not mention this as a reason for rejecting Dr. Simon's opinion. *See* AR 22. It therefore is an improper *post hoc* rationalization that the Court cannot accept. *Haga*, 482 F.3d at 1207−08.

[14] The parties do not analyze every moderate limitation, and the Court will not do so either.

12

complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" are work-related mental abilities that are "critical for performing unskilled work," and the ALJ must adequately address them in the RFC.[15] *See* POMS 25020.010(B)(3)(e), (i). Because Dr. Simon's Section III narrative does not "adequately encapsulate" her Section I findings of a moderate limitation in these critical areas, and because the ALJ failed to explain why he rejected these limitations, remand is required. *See Carver*, 600 F. App'x at 619.

The Commissioner argues that an ALJ does not "need to *expressly* incorporate all of the limitations from Section I" into the RFC, and that "it is sufficient if the Court can conclude the

---

[15] "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96-8p, 1996 WL 374184, at *1. This means the ALJ must consider how the claimant's impairments affect his or her physical abilities, mental abilities, and other abilities. An ALJ must consider all of the following when assessing a claimant's mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(c), 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."). In formulating the RFC, an ALJ must perform a function-by-function assessment of these work-related functions, considering all of the relevant evidence in the case record. SSR 96-8p, 1996 WL 374184, at *2. The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities.'" *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *6).

ALJ accounted for the Section I limitations" in the RFC. Doc. 19 at 14.[16] The Commissioner cites *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (as quoted in *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016)), for the proposition that an ALJ "can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Id*. *Vigil*, however, is distinguishable. In *Vigil*, the Tenth Circuit held that the ALJ adequately accounted for the claimant's moderate limitations in concentration, persistence and pace by "limiting him to unskilled work activity." 805 F.3d at 1204. The moderate limitations at issue in *Vigil* were limitations in the claimant's ability to "perform complex tasks." *Id.* at 1203–04. The ALJ in *Vigil* noted that the claimant retained the capacity to "perform at least simple tasks." *Id.* at 1204. Because unskilled work only requires the ability to understand, remember, and carry out **simple** instructions and make **simple** work-related decisions, the Court in *Vigil* held that the RFC limiting the claimant to unskilled work adequately addressed the claimant's limitation in his ability to perform complex tasks. *Id.* The court in *Vigil* was careful to point out, however, that "[t]here may be cases in which an ALJ's limitation to unskilled work does not adequately address a claimant's mental limitations." *Id.* (citing *Chapo*, 682 F.3d 1285, 1290 n.3). Thus, *Vigil* does not stand for the broad proposition that a limitation to unskilled work adequately addresses **all** moderate limitations in concentration, persistence and pace.

---

[16] Although the Commissioner cites *Smith v. Colvin*, 821 F.3d 1264 (2016), the Commissioner does not argue that the Tenth Circuit's analysis of moderate limitations in that case is specifically applicable to the moderate limitations at issue in this case, and he therefore has waived this argument. Even assuming that the Commissioner had made these arguments, *Smith* did not address a moderate limitation in a claimant's ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." *See King v. Berryhill,* No. 16cv0519 SMV, 2018 WL 522305, at *4 (D.N.M. Jan. 22, 2018) (holding that "*Smith* simply does not address [this] limitation[] and, therefore, cannot support Defendant's position that the limitations are adequately accounted for by a limitation to unskilled work."); *Milner v. Berryhill*, 16cv1050-GJF, 2018 WL 461095, at *15 (D.N.M. Jan. 18, 2018) (same).

The Tenth Circuit has held that moderate limitations in concentration, persistence and pace *may* be accounted for in an RFC that restricts a claimant to performing simple tasks or unskilled work. *See Lee v. Colvin*, 631 F. App'x 538, 541−42 (10th Cir. 2015) (unpublished). But this is not always the case. "A limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments." *Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012) (unpublished) (citing *Chapo*, 682 F.3d at 1290 n.3 (a restriction to "simple work" is a vague catch-all term which is insufficient to adequately account for mental limitations)). The Commissioner argues that "moderate" could mean "anything between a full ability to perform an activity and an inability to usefully perform the activity." Doc. 19 at 14–15. The Court is not persuaded. "[A] moderate impairment is not the same as no impairment at all." *Haga*, 482 F.3d at 1208. Thus, "moderate limitations must be accounted for in the RFC finding." *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014) (unpublished).

In this case, unlike *Vigil*, the claimant's moderate mental limitations are not adequately addressed by an RFC limiting him to unskilled work, or by any of the limitations the ALJ included in his RFC. Dr. Simon assessed Mr. Vienna with moderate limitations in his ability to "maintain regular attendance, and be punctual within customary tolerances," and in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." These are mental abilities needed for any job. POMS DI 25020.010(B)(2)(a). These mental abilities are also "critical for performing unskilled work." POMS DI 25020.010(B)(3)(e), (i). These requirements "are usually strict." *Id.* Because these abilities are a general requirement for all jobs, the ALJ must address these limitations in formulating Mr. Vienna's RFC. *See Bowers v. Astrue*, 271 F. App'x 731, 733–34 (10th Cir. 2008) (unpublished) (noting

that a moderate limitation in another ability required for all jobs—the ability to respond appropriately to changes in a routine work setting—could decrease the ability to perform simple or unskilled work because it is a general work requirement). Thus, unlike *Vigil*, which discussed a limitation in the ability to do complex tasks—a mental ability not required to perform unskilled work—the moderate limitations at issue in this case are critical to the performance of unskilled work. The ALJ therefore erred by not incorporating these limitations into Mr. Vienna's RFC or explaining his reasons for rejecting them.

## VI. Conclusion

The ALJ erred in failing to incorporate or to explain why he rejected at least two moderate limitations assessed by Dr. Sheri Simon into Mr. Vienna's RFC. The ALJ failed to either incorporate or explain why he rejected the moderate limitation in Mr. Vienna's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and the moderate limitation in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. The Court remands so that the ALJ can remedy these errors.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 15) is GRANTED.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent